**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JOKARI MILLER,**<br>**#Y39531,** | |
| **Plaintiff,** | **Case No. 20-cv-00448-SPM** |
| **v.** | |
| **LIEUTENANT SIMON,**<br>**HEALTH CARE UNIT DIRECTOR, and**<br>**LU WALKER,** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

**MCGLYNN, District Judge:**

Plaintiff Jokari Miller, an inmate of the Illinois Department of Corrections who is currently incarcerated at Shawnee Correctional Center ("Shawnee"), brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. He claims that while at Shawnee he was held in unconstitutional conditions of confinement, denied medical care, and retaliated against. Miller seeks monetary damages and injunctive relief.

The Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Court must also consider whether any claims are improperly joined and subject to severance or dismissal. *See George v. Smith,* 507 F. 3d 605, 607 (7th Cir. 2007).

## THE AMENDED COMPLAINT

In the Amended Complaint, Miller alleges he has been held in unconstitutional conditions of confinement and retaliated against by prison administration at the direction of Warden Walker. He also was denied medical care and subjected to excessive force.

### *Unconstitutional Conditions*

In November 2019, Miller was transferred to Shawnee Correctional Center. (Doc. 46, p. 2). After staying in "receiving" for 7 days, he was placed in 4-House. His cell and the dayroom in 4-House had excessive and dangerous amounts of dust. Miller and other inmates notified Warden Walker of the uncleanliness of the cells but nothing was done to clean the cells and vents. Miller states that he was treated as if he was less than an animal. The same housing unit, 4-House, also houses a "dog program," and, contrary to the living units that held inmates, the dogs' living quarters were cleaned regularly. (*Id.*).

Miller was then moved to 2-House. (Doc. 46, p. 2). The conditions of his cell in 2-House were significantly worse than his previous cell. There was mold in the cells and shower, and excessive dust in the cells and dayroom. (*Id.*). The windows of 2-House did not function properly. (*Id.* at p. 3). The screens were "split open," and the windows could not be properly opened and closed from inside the cell. The windows could be pushed open from the inside, but they had to be pushed closed by someone on the outside of the building. As a result, Miller was exposed to dangerously freezing weather and excessive bugs, including brown recluse spiders, black widow spiders, and mosquitos. (*Id.*).

The exposure to the elements exacerbated Miller's existing medical conditions. (Doc. 46, p. 3). He has severe plaque psoriasis, and the cold temperatures caused his skin to crack, flake, and bleed. The health care unit was aware of Miller's skin condition but refused to provide him medication, ointment, and proper soap. Miller also has a metal plate, pins, and screws in his left

ankle, and the cold temperatures aggravated and caused pain to this previous injury. (*Id.*).

Miller claims also that the water at Shawnee is toxic and dangerous to drink, and he has been subjected to attempts of forced sterilization due to exposure to chemicals in products sold at the commissary. (Doc. 1, p. 11).

**Excessive Force**

On January 14, 2020, while walking to the cafeteria, a correctional officer gave the order to "pair-up." (Doc. 46, p. 4). Miller, who is hearing impaired, did not understand the officer. (*Id.*). Additionally, Miller has a "slow-walker permit." (*Id.* at p. 5). The permit allows him to walk at his own pace, and he is not required to walk in the line with the other inmates. As another inmate was attempting to explain to the officer Miller's disabilities, Lieutenant Simon grabbed Miller by the left shoulder and pushed Miller to the back of the line, causing pain to his shoulder and knee joints. (*Id.*).

Miller filed a grievance and was taken to the health care unit for his shoulder and knee injuries. (Doc. 46, p. 6). An x-ray was conducted, and Miller was diagnosed with a torn rotator cuff. (*Id.*). He was later interviewed by an internal affairs officer who asked him what actions could be taken to rectify the incident. (*Id.* at p. 7). Miller responded that the wanted to be placed in 4-House in a single man cell away from Lieutenant Simon. The internal affairs department agreed to Miller's requests. However, he was placed back in 4-House with a cellmate, and Lieutenant Simon came into the cell house a few days later and gave Miller a threatening and intimidating look. Miller did not receive any further treatment for his shoulder injury.

**Retaliation and Harassment**

Miller also claims that he is being retaliated against for filing a lawsuit on February 3, 2020, against Warden Walker, Lieutenant Simon, and the health care unit. (Doc. 46, p. 8). The following day, on February 4, 2020, he was placed in disciplinary segregation 1. He was stripped

completely naked and "put on display inside of one of the clear segregation 'boxes' located in an area which was frequented by staff, officers, and inmate workers alike." (*Id.*). He was given a bright yellow one-piece coverall to wear and not allowed to keep his thermal underwear to protect his severe skin condition. After two days, Miller was placed in segregation 2, where he was given his property and normal prison clothes. (*Id.*). He was held in segregation 2 for over an entire year from February 2020 until March 2021. (*Id.* at p. 9, 12). While in segregation, he was subjected to extreme isolation, denied access to the law library, recreational yard, television, and various other programs available to general population inmates. (*Id.* at p. 9). Miller's mail was tampered with and withheld. (*Id.*). Miller was told he was being held there awaiting a transfer, but on a separate occasion he was informed he was there for security reasons. (*Id.* at p. 12). He was never charged with a disciplinary infraction, and he is still housed at Shawnee. (*Id.* at p. 8).

While in segregation, Lieutenant Simon was allowed to come into the housing unit and would walk by Miller's cell over 400 times. (Doc. 46, p. 12). Lieutenant Simon still enters Miller's current housing unit and walks in front of Miller's cell in an attempt to intimidated and "terrorize" him. (*Id.* at p. 13).

***Denial of Medical Care***

Prior to incarceration, Miller's skin condition, plaque psoriasis, was treated by a dermatologist using "proper soaps, and conduct[ing] necessary treatments to keep his condition from spreading." (Doc. 46, p. 14). After arriving at Shawnee, Miller was examined by Dr. Caldwell and Dr. David, as well has other medical staff. He was repeatedly told by the medical professionals at Shawnee that they had never seen a skin condition worse than his. Pictures were taken of his body so that a request for outside services could be sent to IDOC for approval. Despite being told the severity of his condition, Miller was not prescribed the most basic necessities to treat his ailment, such as shea butter, coconut oil, Minerin Creme, and nonirritant soaps. (*Id.*).

Page 4 of 14

In the beginning of 2020, Miller was sent to an outside dermatologist, Dr. Hall, in Mount Vernon, Illinois. (Doc. 46, p. 14). Dr. Hall instructed that Miller should be provided two jars of Minerin Creme and two bars of Dove unscented soap per month. (*Id.* at p. 15). Dr. Hall also recommend that Miller be placed on the list for daily showers in the health care unit and weekly bath soaks for treatment. Because the plaque psoriasis causes his skin to break and bleed, he is susceptible to infection and should not use the showers in the housing units because they are not properly cleaned and sanitized after each use. (*Id.*).

Miller has never been placed on a list to receive a weekly soak, and he was not placed on the list to use the health care unit shower from March 2020 through the middle of 2021. (Doc. 46, p. 15). The lack of treatment has caused his skin condition to worsen and contributed to the development of psoriatic arthritis. (*Id.*).

### Preliminary Dismissals

Miller claims that after Lieutenant Simon physically assaulted him, Lieutenant Simon would harass him by walking by his cell or by being present in his housing unit. (Doc. 46, p. 7, 12). This conduct does not rise to the level of a constitutional violation and is dismissed.

The Court also dismisses Miller's claims regarding inadequate medical treatment at Shawnee. He alleges that health care staff did not provide him medical care for his shoulder injury caused by Lieutenant Simon or his plaque psoriasis. (Doc. 46, p. 7, 15). Miller has not asserted these allegations, however, against any of the named Defendants. He states that the Shawnee Health Care Unit is under the direction of the Health Care Unit Director, who is responsible over various health care unit officials who caused his injury. (*Id.* at p. 1, 15). Likewise, Miller asserts that the Health Care Unit Director is under the direction of Warden Walker. (*Id.* at p. 15).

This is not sufficient to state a claim. To assert liability under Section 1983 claim, a plaintiff must allege that each defendant was personally involved in the deprivation of a constitutional right.

Page 5 of 14

*Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014). A defendant cannot be held liable for the actions of subordinates, as the doctrine of *respondeat superior* does not apply to actions filed under Section 1983. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Here, Miller has not provided any factual allegations describing the involvement by Defendants in his medical care. Stating that they are in supervisory positions is not sufficient to state a claim. Thus, allegations regarding his medical treatment are dismissed.

**DISCUSSION**

Based on the allegations of the Complaint, the Court finds it convenient to designate the following counts:

| | |
|---|---|
| **Count 1:** | Eighth Amendment claim against Warden Walker for housing Miller in unconstitutional conditions of confinement in 4-House and 2-House. |
| **Count 2:** | Eighth Amendment claim against Lieutenant Simon for the use of excessive force against Miller on January 14, 2020. |
| **Count 3:** | State law claim against Defendants for the intentional infliction of emotional distress. |
| **Count 4:** | First Amendment claim against Warden Walker for retaliating against Miller for filing a lawsuit by directing prison staff to place him in segregation and mishandle his legal mail. |
| **Count 5:** | Fourteenth Amendment claim against Warden Walker for placing Miller in segregation for over a year without due process of law. |
| **Count 6:** | Eighth Amendment cruel and unusual punishment claim against Warden Walker for placing Miller in segregation for over a year. |
| **Count 7:** | Eighth Amendment cruel and unusual punishment claim against Warden Walker for directing the strip search and placement of Miller in a clear box on display for staff and other inmates. |
| **Count 8:** | Eighth Amendment cruel and unusual punishment claim against Warden Walker for subjecting Miller to forced sterilization and toxic drinking water. |
| **Count 9:** | First Amendment claim against Warden Walker for denying Miller |

the right to petition the government for redress of his grievances.

**Count 10:**     State law claim against Warden Walker for the intentional infliction of emotional distress.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.** *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

SEVERANCE

Federal Rule of Civil Procedure 20 prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Therefore, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of law or fact common to all. *See George*, 507 F.3d at 607. Federal Rule of Civil Procedure 21 grants district courts broad discretion when deciding whether to sever claims or to dismiss improperly joined defendants. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The Court finds that Counts 2 and 3, the claims of excessive force and intentional infliction of emotional distress against Lieutenant Simon, and Counts 1, 4-10, claims against Warden Walker should not remain in the same lawsuit. Counts 2 and 3 involves a separate defendant and a separate transaction and occurrence. Miller attempts to connect all his claims in the Amended Complaint by describing Defendants as acting "in concert." (Doc. 46, p. 16). But there are no allegations to support this conclusory statement, and the alleged concentrated efforts on the part of prison staff

to retaliate against Miller for filing a lawsuit at the direction of Warden Walker occurred after the excessive force incident. Lieutenant Simon has nothing to do with the claims against Warden Walker, and the Court finds that Lieutenant Simon would be prejudiced if forced to defend the claims against him along with the seven other unrelated counts.

For these reasons, Counts 1 and 4-10 shall remain in this action, and the merits of these claims will be reviewed in this Order. Counts 2 and 3 shall be severed into a separate action.

## Count 1

Miller has stated a viable claim for unconstitutional conditions of confinement against Walker. He alleges that while housed in 4-House his cell and the ceiling vents in the dayroom had an excessive amount of dust and were never properly cleaned. He also claims that while in 2-House the cell, dayroom, and showers had excessive dust and mold, and he was exposed to extreme cold temperatures and dangerous insects because of the broken window. Walker was notified of these conditions via grievances and did not act to remedy the situation. *See Haywood v. Hathaway,* 842 F. 3d 1026, 1030 (7th Cir. 2016); *Board v. Farnham,* 394 F. 3d 469, 487 (7th Cir. 2005); *Dixon v. Godinez,* 114 F. 3d 640, 642-643 (7th Cir. 1997). Count 1 will proceed against Walker.

## Count 4

Miller states that he was stripped searched and placed in segregation for over a year and his legal mail was mishandled at the direction of Warden Walker in retaliation for filing a lawsuit on February 3, 2020. (Doc. 46, p. 9, 10, 16). This is sufficient for Count 4 to survive against Walker. *See Holleman v. Zatecky,* 951 F. 3d 873, 878 (7th Cir. 2020) (discussing the elements of a retaliation claim).

## Count 5

The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property." *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). Generally, prisoners "do

Page 8 of 14

not have a liberty interest in avoiding brief periods of segregation, whether administrative or disciplinary." *Smith v. Akpore*, 689 F. App'x 458, 460 (7th Cir. 2017). A protected liberty interest is triggered only when the segregation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Lisle v. Welborn*, 933 F.3d 705, 721 (citing Sandin v. Conner, 515 U.S. 472, 484 (1995)). In order to determine if a sentence of segregation amounts to an atypical and significant hardship, the Court looks "to both the duration of the segregation and the conditions endured." *Lisle*, 933 F.3d at 721 (citing Marion, 559 F.3d at 697).

Miller alleges he was placed in disciplinary segregation for over a year for an unknown reason. (Doc. 46, p. 8). He did not receive a disciplinary charge, and he was told conflicting reasons for his placement there. (*Id.* at p. 12). While in segregation, Miller claims he was subjected to extreme isolation and denied access to the law library, television, regular yard access, and various programs at the facility. (*Id.* at p. 9).

While the denial of certain privileges such as such as television, work programs, placement in a work release program,[1] and even the law library, would not trigger due process requirements, a year in segregation in "extreme isolation" may implicate a liberty interest. *See Williams v. Brown,* 849 F. App'x 154, 157 (7th Cir. 2021); *Zimmerman v. Tribble,* 226 F. 3d 568, 571 (7th Cir. 2000). Thus, Count 5 will proceed against Warden Walker.

## Count 6

Miller has also sufficiently stated an Eighth Amendment claim for his prolonged confinement in segregation. *See Walker v. Shansky,* 28 F. 3d 666, 673 (7th Cir. 1994). Count 6 will proceed against Warden Walker.

---

[1] There may be a protected interest in remaining in a work release program once awarded, but Miller only claims he was unable to "apply for work-release," while in segregation. (Doc. 46, p. 9). *See Segreti v. Gillen,* 259 F. Supp. 2d 733, 738 (N.D. Ill. 2003) (protected interest in *remaining* in work release); *Blankenship v. Kittle,* No. 03 C 3573, 2003 WL 22048712, at * (N.D. Ill. Aug. 6, 2003) (the regulation governing eligibility for work release does not create a liberty or property interest).

**Count 7**

Miller alleges that for unknown reasons he was taken to segregation 1, where he was "humiliatingly stripped completely naked, and put on display inside of one of the clear segregation 'boxes' located in an area which was frequented by staff, officers, and inmate workers." (Doc. 46, p. 8). Miller alleges that these acts of harassment were done at Warden Walker's direction. (*Id.* at p. 16).

Strip searches that are not related to legitimate security needs or are conducted in a harassing manner in order to humiliate and inflict psychological pain, may be found unconstitutional. *See Mays v. Springborn,* 575 F. 3d 643, 649-50 (7th Cir. 2009). Accordingly, Count 7 will proceed against Walker.

**Count 8**

Miller will be allowed to proceed in part with Count 8. He claims that the water becomes dangerously toxic after traveling through old, eroded pipes, and staff is repeatedly warned not to consume the water. These claims are sufficient to survive screening. *See Carroll v. DeTella,* 255 F. 3d 470, 472 (7th Cir. 2001).

Miller's claims regarding forced sterilization, however, are dismissed. He alleges that at the direction of Warden Walker, inmates are sold a "hot pot," vitamins, and various other plastic products which contain sterilizing chemicals. (Doc. 46, p. 11-12). Specifically, the hot pot that is sold at Shawnee contains bisphenol A, a chemical known to the cause birth defects or other reproductive harm. Miller wrote a grievance pointing providing information on other hot pots made by different companies that do not contain bisphenol A, but the facility continues to sell the same product knowing it causes reproductive harm.

There is no constitutional right to purchase items, food or non-food, from a commissary. *See Brown v. Gulash,* No. 07-cv-370-JPG, 2009 WL 2144592, at *5 (S.D. Ill. July 16, 2009)

(citations omitted). *See also McClarin v. Walker,* No. 07-1003, 2007 WL 1188360, at *3 (C.D. Ill. Apr. 20, 2007) (no right to purchase a hot pot). Therefore, the constitution is not violated because the prison only sells certain products that Miller believes are unsafe. He is not required to buy or use such products, and the prison is not constitutionally required to stock the commissary with particular items. Accordingly, Count 8 will proceed against Warden Walker only regarding Miller's claims of toxic water.

### Count 9

Miller alleges that while in segregation he attempted to prepare and mail a petition of clemency. (Doc. 46, p. 9-10). He states that when filing for clemency, he is required to send a copy to the judge, the State's Attorney's Office, and the Prisoner Review Board. Without Miller's authorization, the mailroom staff sent all three copies of the petition to the Prisoner Review Board. The petition was subsequently denied by the Prisoner Review Board because he had not sent the petition to the proper parties. Miller alleges that his attempts to seek clemency were sabotaged at the direction of Warden Walker.

Miller has sufficiently claimed that his right to petition the government for redress of grievances under the First Amendment was violated. *See Gonzales v. Madigan,* No. 16 C 7915, 2017 WL 977007, at *4 (N.D. Ill. Mar. 14, 2017) (observing that a request for a gubernatorial pardon constitutes a petition under the First Amendment). Count 9 will proceed against Warden Walker.

### Count 10

Under Illinois law, to state a claim for intentional infliction of emotional distress, a plaintiff must allege (1) the defendants engaged in extreme and outrageous conduct; (2) the defendants either intended to inflict severe emotional distress or knew there was a high probability that their conduct would cause severe emotional distress; and (3) the defendants' conduct in fact

caused severe emotional distress. *McGreal v. Vill. Orland Park*, 850 F.3d 308, 314 (7th Cir. 2017).

Count 10 will proceed against Warden Walker for placing Miller in segregation for over a year and impeding his ability to seek clemency for non-penological reasons. *See* 28 U.S.C. § 1367(c).

### MOTION TO SUPPLEMENT

The motion to supplement the Amended Complaint with additional exhibits is **GRANTED.** (Doc. 47). Going forward, Miller is advised that the Court does not allow piecemeal amendments to a complaint. In order to modify or add to a complaint, the plaintiff must file a motion for leave to amend and submit a proposed amended complaint. The proposed amended complaint must stand complete on its own and include any and all exhibits.

### DISPOSITION

#### *Preliminary Dismissals*

For the reasons provided above, the claims regarding Miller's medical care at Shawnee are **DISMISSED without prejudice**. Because there are no claims against the Health Care Unit Director, this defendant is **DISMISSED without prejudice**. The allegations regarding Lieutenant Simon's repeated presence in Miller's housing unit are also **DISMISSED without prejudice.**

#### *Severance*

Counts 2 and 3 are **SEVERED** into a new case against Lieutenant Simon. The claims in the new case shall be subject to merits review pursuant to 28 U.S.C. § 1915A after the new case number and judge assignments are made. In the new case, the Clerk is **DIRECTED** to file the following documents:

(1) This Memorandum and Order; and
(2) The Amended Complaint (Doc. 46).

The **only claims remaining in this action are Counts 1 and 4-10 against Warden**

**Walker.** The Clerk of Court is **DIRECTED** to terminate Lieutenant Simon as a defendant in this action.

### *Merits Review*

The Amended Complaint survives preliminary review pursuant to 28 U.S.C. § 1915A. Counts 1, 4, 5, 6, 7, 9, and 10 will proceed against Warden Walker. Count 8 is **DISMISSED in part** and will proceed against Warden Walker as to the allegations regarding toxic drinking water.

The Motion to Supplement (Doc. 47) is **GRANTED.**

The Clerk of Court shall prepare for Warden Walker the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Miller. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Defendant cannot be found at the work address provided by Miller, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, her last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to file an appropriate responsive pleading to the Amended Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merit Review Order.**

Page 13 of 14

If judgment is rendered against Miller, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Finally, Miller is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   November 5, 2021**

_s/Stephen P. McGlynn_____
**STEPHEN P. MCGLYNN**
**United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.